(R.D. 11518)

BRENTWOOD ORIGINALS (FRITZ) *v.* UNITED STATES

Entry No. 2221.

(Decided May 2, 1968)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Brian S. Goldstein*, trial attorney), for the defendant.

FORD, Judge: This appeal for reappraisement is a retrial of the issues presented in *Brentwood Originals et al.* v. *United States*, 58 Cust. Ct. 575, R.D. 11258. The decision held the appraisement therein, export value, not to be separable and, as such, plaintiff's claim for the allowance of a buying commission could not be sustained in the absence of proof establishing all necessary requirements for export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

The case at bar involves an appraisement made under the same basis, export value, and in the same manner as in the above case, i.e., "appraised in United States $ unit values indicated in Red Ink, net, pkd." The record in R.D. 11258, *supra*, was incorporated herein. Plaintiff contends, as it did in the incorporated case, that the buying commission paid to the Nichimen Co. was not properly part of the dutiable value. Plaintiff does not contest the basis of appraisement and, in fact, is relying upon all phases of the appraisement except

the inclusion thereof of the buying commission. The pertinent portions of the statute read as follows:

Section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions \* \* \*.

The court, in its decision in the incorporated case, summarized the record made therein which I adopt by reference. The additional testimony adduced in the instant case was that of Mr. Harold Alden, who had testified in the incorporated case, and the examiner, Mr. Edward H. Cummings, who advisorily appraised the involved entry.

Mr. Alden's testimony established the fact that piece goods are selected by him from the mill. The mill would not sell directly to him or to the company that manufactures the involved merchandise. The piece goods were purchased through Nichimen. Direct negotiations were then had with Mr. Alden and the manufacturers of the merchandise involved herein.

According to the testimony of Mr. Alden, after the merchandise is ordered, two contracts are sent to him, one representing the ex-factory basis and the other the f.o.b. basis. The f.o.b. contract according to the witness included, in addition to the ex-factory price, packing, shipping charges, and the buying commission. Both contracts are submitted to customs after they have been approved by Alden. As far as the witness knew, there was no relationship between the manufacturer, Hirota Hoko and Nichimen. Plaintiff no longer does business with Hirota Hoko as Nichimen advised him that they were in financial difficulty.

Mr. Cummings testified that he made the advisory appraisement of the involved merchandise and issued form 5555, received as plaintiff's exhibit 1, advising plaintiff that customs proposed to advance the value at f.o.b. unit, net, packed, prices. This action was taken after it was determined by him, on information available to him (the contracts between plaintiff and Nichimen), that the f.o.b. unit prices, net, packed, were the freely offered prices. He did not know whether the f.o.b. values included the 6 percent commission since they were not broken down in the contract. The examiner testified that he did not use the charges noted on the invoice but utilized the information contained in the contracts between plaintiff and Nichimen Co.

Since there has been no attempt on the part of plaintiff to establish all the necessary requirements of export value which are prescribed in section 402(b), as amended, *supra*, the only possibility of its success is based upon the determination by the court that said appraisement is separable. The question of separability of appraisement has been firmly established. *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 CCPA 243, C.A.D. 558; *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371; *United States* v. *Freedman & Slater, Inc. (Household Utilities Mfg. Corp.)*, 25 CCPA 112, T.D. 49241; *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914.

An examination of the official papers, which were received in evidence without being marked, indicates the appraisement was made at the unit values shown in red ink, net, packed. On its face, therefore, the appraisement is not one which conforms to the principles of separability. An appraisement is usually considered separable when it is made on the basis of the invoiced unit values, plus certain additional items. Where an appraisement is made in the manner involved herein, it amounts to a *per se* value.

In an effort to establish separability, plaintiff attempted, through the testimony of the examiner, Mr. Cummings, to show that he included the 6 percent buying commission in his advisory appraisement. The examiner testified that he did not know if his appraisement included the commission since he took the figures for his appraisement from the contracts between plaintiff and Nichimen Co. The testimony of Mr. Alden that the f.o.b. contract always included buying commission does not supply the vital information necessary for the determination of the separability of the appraisement. Even if we were to accept the testimony of Mr. Alden, there is no evidence that the appraiser included, in his appraisement, the actual figure representing the 6 percent commission. In any event, the testimony of Mr. Alden amounts to his interpretation of the contract. Under the Best Evidence Rule, the contract itself rather than the interpretation is required.

It is also to be noted at this point that while the buying commission agreement, plaintiff's exhibit 1 in the incorporated case, provides for a commission of 6 percent of the ex-factory price, the buying commission in the case at bar is set forth on the invoice as 6 percent of the f.o.b. price. This, in fact, amounts to a commission being paid on all charges including buying commission. In any event, we have no evidence of whether the appraiser included the buying commission in his appraisement. Even if it had been established that a buying commission of 6 percent had been included in the appraisement, the record is still lacking evidence as to whether the 6 percent was that of the ex-factory or f.o.b. price.

In view of the foregoing, it is not necessary for me to consider whether the buying commission is a *bona fide* one. I do note, however, that defendant's exhibit "A," a report of a Treasury representative made approximately 2 years prior to the importation, does cast doubt that Nichimen Co. was in fact a *bona fide* buying commissionaire for plaintiff.

I, based upon the record as made, find as facts:

1. That the merchandise covered by this appeal for a reappraisement consists of certain rayon floor-cushion covers which do not appear on the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

2. That the merchandise in issue is reported by the appraiser at various *per se* unit values, per dozen, net, packed, on the basis of export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

On the record herein, I conclude as matters of law:

1. That the appraisement is not separable.

2. That the proper statutory basis for valuation of the subject merchandise is export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

3. That the export value of the various items of merchandise herein involved are the appraised values.

Judgment will be entered accordingly.